**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**BERMUDA STAR LINE, INC., formerly known as Bahama Cruise Line, Inc., Defendant.**

No. 88–1474–Civ–T–15A.

United States District Court,
M.D. Florida,
Tampa Division.

July 19, 1990.

Robert Canino, E.E.O.C., Miami Dist. Office, Miami, Fla., for plaintiff.

John P. McAdams, Carlton, Fields, Ward, Emmanuel, Smith, Cutler & Kent, P.A., Tampa, Fla., for defendant.

## ORDER

CASTAGNA, District Judge.

Defendant's motion for summary judgment (D–20) contends that this Court does not have subject matter jurisdiction over plaintiff's claim, and that defendant is entitled to judgment as a matter of law. Plaintiff's response to defendant's motion (D–78) agrees that there is no genuine issue of material fact pertinent to the question of subject matter jurisdiction, and that therefore the Court may rule on the question as a matter of law, but counters that the judgment should be in its favor on the issue. Rule 56(c), Fed.R.Civ.P. (summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Also pending is plaintiff's motion for permission to allow its response to motion for summary judgment on jurisdiction to exceed twenty pages (D–78), and defendant's motion for leave to file an amended answer (D–79).

### I.

On February 13, 1985, Susan K. Harmon sought an entry-level employment position as a wiper or ordinary seaman in the deck or engine department of defendant's cruise line operations. The vessel she would have worked on is the S/S Veracruz. The employment inquiry was made over the telephone from Ms. Harmon to Captain Glidden, defendant's port captain, whose office was at defendant's Miami office. Harmon was told that, because she was female, her application for employment would not be accepted. The hiring criteria for a wiper or ordinary seaman position includes a requirement that the applicant be male.

Defendant is a corporation organized under the laws of the Cayman Islands, but during the time relevant to this suit maintained its principal office and corporate headquarters in either New York, New York or Teaneck, New Jersey. Defendant also has offices in Miami and Tampa, Florida. Those who made employment policy for the company were United States residents. The Veracruz is registered in the Republic of Panama, and flies the Panamanian flag, but apparently has few if any other contacts with Panama. Tampa is the regular port of call of the Veracruz. The crew is of various nationalities.

Defendant has stipulated that substantially all of its advertising, during the time relevant to this case, was directed to residents of the United States, and that substantially all of the travel agencies which referred clients to the defendant were located in the United States. Passenger lists confirm that the great majority of the Veracruz's passengers were from the United States. The defendant also purchased substantially all necessary goods and services from United States businesses.

### II.

Defendant's argument is that the protections of Title VII, 42 U.S.C. section 2000e, et seq., upon which plaintiff's claim is based, does not apply to these facts. Defendant relies heavily on a recent Fifth Circuit ruling that Title VII does not have extraterritorial effect, *Boureslan v. Aramco, Arabian American Oil Co.*, 892 F.2d 1271 (5th Cir.1990) (en banc), and also on the general maritime principal of law of the flag. See *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953). Plaintiff responds that this is not really an extraterritorial application case, as all allegations against the defendant concern activities which occurred in United States territory. Plaintiff agrees that *Lauritzen* may provide the proper outline for analyzing the question, but argues that factors other than law of the flag outweigh this circumstance in this case.

## A.

In *Boureslan* the Fifth Circuit ruled that Title VII does not apply to a United States citizen employed in Saudi Arabia by a United States corporation. Such a question has yet to be decided in this Circuit. However, the Court agrees with plaintiff that, regardless of whether Title VII should have extraterritorial effect, this case would not be controlled by such a rule.

*Boureslan* turns on the canon of construction that the laws of Congress are presumed not to have extraterritorial effect. It was the facts of that case, involving alleged Title VII violations occurring in Saudi Arabia, which called for the application of such a presumption. Here, however, plaintiff contends that Harmon applied for and was refused employment in the United States, albeit for service on a ship flying a foreign flag. As defendant's alleged actions occurred within United States territory, the *Boureslan* presumption does not apply. Ships in port are bound, on matters which are not wholly internal to the ship, by the laws of that port. *Benz v. Compania Naviera Hidalgo, S.A.*, 353 U.S. 138, 142, 77 S.Ct. 699, 701, 1 L.Ed.2d 709 (1957) ("It is beyond question that a ship voluntarily entering the territorial limits of another country subjects itself to the laws and jurisdiction of that country."). Defendant's actions were not internal to the Veracruz, but rather involved its relations to those citizens of the United States who apply for employment with the ship. These actions occurred in United States territory, and the effects are not limited to the ship. Accordingly, the presumption of extraterritorial inapplicability, relied upon by the court in *Boureslan,* is not implicated.

## B.

In *Lauritzen,* a Danish seaman sought to receive damages under the Jones Act, 46 U.S.C.App. § 688, from his Danish employer for injuries which occurred while he was signed with a ship which flew the flag of Denmark. The sole connection to the United States was the fortuity that he had signed on to the ship while it was in the Port of New York. The Supreme Court listed seven factors for consideration in determining whether the Jones Act should apply to the seaman: (1) place of the wrongful act; (2) law of the flag; (3) allegiance or domicile of the injured; (4) allegiance of the defendant shipowner; (5) place of contract; (6) inaccessibility of foreign forum; (7) law of the forum. Although these factors were presented for construction of the Jones Act, they are broadly applicable to cases with a maritime setting, and so provide a helpful outline for consideration of the issue presented here. See *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 382, 79 S.Ct. 468, 485, 3 L.Ed.2d 368 (1959) ("[t]he broad principles of choice of law and the applicable criteria of selection set forth in *Lauritzen* were intended to guide courts in the application of maritime law generally").

The first factor, place of the wrong, points to the United States, as here is where Harmon made the telephone call to defendant. The agent of defendant who took the call and gave the rejection was also in the United States. Although in Jones Act cases the place of the wrong should generally be given little weight, as the place a seaman is injured will generally be a fortuitous matter, here it is not so. The wrong, under Title VII, is discrimination in employment decisions. Here, all aspects of this alleged wrong occurred in United States territory. Title VII differs from the Jones Act, which is generally a scheme by which a seaman may recover damages for injuries sustained in maritime service, in that Title VII prescribes a framework of behavioral norms, and deviation from these norms is made illegal under the law. Given this difference, the Court is persuaded that, in Title VII maritime cases, the place of the wrong factor merits considerable weight.

Defendant emphasizes that the law of the flag of the ship that Harmon would have worked on is Panamanian, and that this factor should settle the issue in its favor. True it is that as a general matter "the weight given to the ensign overbears most other connecting events in determin-

ing applicable law." *Lauritzen,* 345 U.S. at 585, 73 S.Ct. at 929. However, this is only as to "matters of discipline and all things done on board which affected only the vessel or those belonging to her, and did not involve the peace or dignity of the country, or the tranquility of the port. . . ." *Id.* at 585–586, 73 S.Ct. at 930 (quoting *Cunard Steamship Co. v. Mellon,* 262 U.S. 100, 123, 43 S.Ct. 504, 507, 67 L.Ed. 894 (1923)). This case involves the ships relation with those United States citizens and residents who apply for maritime employment. As the challenged policy of the ship affects those who are not yet in the ships employ, indeed who will, because of the policy, never become in the ships employ, it cannot be said that this is a wholly internal matter, and the strength of the law of the flag doctrine is for this reason less compelling.

The law of the flag factor is even further dissipated in this case for the reason that, other than flying the Panamanian flag, and being registered in that country, the Veracruz appears to have no other connections to Panama. It does not appear that any of the defendant's major stockholders are Panamanians, nor its port captains, nor ship's captains, nor does it appear that defendant's ships ever visited Panama. As far as the record before the Court shows, the Veracruz's flag was one of convenience, as there is no other genuine link between the ship and the country of Panama. As such, this factor is entitled to little weight in considering whether the laws of the United States should apply to its hiring practices in United States ports. See *Lauritzen,* 345 U.S. at 587, 73 S.Ct. at 931 ("[I]t is common knowledge that in recent years a practice has grown . . . to avoid stringent shipping laws by seeking foreign registration eagerly offered by some countries. Confronted with such operations, our courts on occasion have pressed beyond the formalities of more or less nominal foreign registration to enforce against American shipowners the obligations which our law places upon them") (footnotes omitted).

The allegiance or domicile of the injured clearly points to the application of the law of the United States, as Harmon is a United States resident and citizen. This factor is "especially significant in choice of law analysis." *Sigalas v. Lido Maritime, Inc.,* 776 F.2d 1512, 1517 n. 6 (11th Cir.1985) (citing *Symonette Shipyards, Ltd. v. Clark,* 365 F.2d 464, 467 (5th Cir.1966), *cert. denied,* 387 U.S. 908, 87 S.Ct. 1690, 18 L.Ed.2d 625 (1967)).

The defendant shipowner is a corporation registered in the Cayman Islands. The record discloses few connections of defendant or of this cause with that nation. Compare *Sigalas,* 776 F.2d at 1518 (finding the nation of defendant's incorporation to be a circumstance of convenience which should be disregarded). In any case, the fact of defendant's incorporation in the Caymans, by itself, is not an adequate basis to stifle the application of United States law in deference to the law of the Caymans. *Symonette,* 365 F.2d at 467 (declining to apply Bahamian law where ship was owned by a Bahamian, was registered there, and flew the Bahamian flag, since, among other things, the plaintiff was a United States citizen).

The place of the contract, i.e., where the seaman was hired, is not implicated in this cause because the plaintiff was never hired. This fact, that she was not hired, is the wrong which is alleged, and is accounted for in the place of the wrong factor.

Inaccessibility of a foreign forum is not a factor that appears to have been given substantial weight by any other courts, and will not be given much weight here. The Court does deem it relevant, however, that Panamanian law does not provide a remedy for plaintiff's claim. Compare *Villar v. Crowley Maritime Corp,* 782 F.2d 1478, 1481 (9th Cir.1986) (dismissal of Jones Act claim conditioned on defendant's "agreement to waive all jurisdictional, venue, and statute of limitations defenses that they might have . . . in the Philippines.")

In *Hellenic Lines, Ltd. v. Rhoditis,* 398 U.S. 306, 310, 90 S.Ct. 1731, 1734, 26 L.Ed.2d 252 (1970), the Supreme Court expanded the list of factors by providing that also to be considered is whether the defen-

dant has "substantial and continuing contacts ... with this country." Here the defendant has its principal offices in the United States and obtains most of its income from United States citizens, who board defendant's ships in United States ports. It follows that defendant's base of operations is the United States.

The above review of the facts of this case in light of the framework provided by *Lauritzen* and *Rhoditis* leaves no doubt that Title VII may properly be applied in this case. Nor is there any reason to construe the statute from applying, as the Fifth Circuits decision in *Boureslan* is inapposite to the facts of this case. Accordingly, the Court finds that Title VII does apply, and that summary judgment should and will be entered in plaintiff's favor on the question of subject matter jurisdiction.

### III.

 Next to consider is defendant's motion for leave to file amended answer (D–79). Three of the changes appear to involve mere cosmetic refurbishing of previously pled defenses, and the Court sees no substantial basis for denying the relief requested. The fourth requested change, however, is problematic, as it would add an entirely new defense to this cause. Defendant wishes to plead that Harmon would not have been hired anyway, because she has prior criminal convictions. This fact has only been recently discovered by defendant, and so the Court will allow the amendment to raise this defense despite the late date. However, counsel is cautioned that the circumstances of Harmon's criminal record raises a substantial risk of prejudice, cf. Fed.R.Evid. 404(b), and the Court will require that the proper predicate for introducing evidence on this point be established before any evidence of Harmon's record is admitted. If defendant is unable to present competent evidence sufficient to support a finding that defendant legitimately has a policy of inquiring into applicants criminal record, and of not hiring those with a record similar to Harmon's, without regard to gender, then this matter will not go before a jury. See generally *United States v. Dothard,* 666 F.2d

498, 501 (11th Cir.1982) (for bad act evidence to be admissible, it must be relevant to an issue other than defendant's character)

Based on the foregoing, it is

ORDERED:

1. Defendant's motion for summary judgment (D–20) is DENIED.

2. Plaintiff's motion for permission to allow its response to motion for summary judgment on jurisdiction to exceed twenty pages (D–78) is GRANTED, and this response, and the included cross-motion for summary judgment, have been considered by the Court.

3. Plaintiff's cross-motion for summary judgment (D–78) is GRANTED, and judgment is entered in plaintiff's favor and against defendant on the issue of subject matter jurisdiction. Title VII applies to the facts of this case.

4. Defendant's motion for leave to file amended answer (D–82) is GRANTED, and defendant will file an answer consistent with that requested by its motion within ten days of the date of this order.

DONE AND ORDERED.